**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Miah Ashton Hebrank,<br>Plaintiff,<br>v.<br>Early Warning Services LLC, et al.,<br>Defendants. | No. CV-24-03711-PHX-MTL<br>**ORDER** |

This is a case alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, seeking actual, statutory, and punitive damages.

Before the Court are Plaintiff Miah Ashton Hebrank's Motion for Partial Summary Judgment (Doc. 76), Defendant Early Warning Services LLC's ("EWS") Motion for Summary Judgment (Doc. 85), and various evidentiary motions (Docs. 79, 82, 103, 108). All motions are fully briefed.

## I. BACKGROUND

Back in 2021, Hebrank tried to deposit a $2,400.00 check in her Regions Bank account. (Doc. 85-8 at 5-7.) But, as she admits, the check was "essentially a scam," it "wound up not being a real thing," and it was returned unpaid. (*Id.*; Doc. 77-9.) Afterwards, Hebrank ceased using her Regions Bank account. (*See* Doc. 76-4 at 3.) In December 2023, Regions Bank closed the account because the monthly account fee caused an overdraft. (*See* Doc. 94-3.)

EWS is a consumer reporting agency ("CRA"), and it maintains the National Shared

Database ("NSD" or the "Database"). (Doc. 86-1 ¶¶ 4, 7.)[1] The Database is populated with customer transaction and account information that furnishers, like Regions Bank, provide to EWS. (*Id.* ¶¶ 7, 26.) NSD Operating Rules identify for furnishers, also referred to as contributors, what kind of customer information will be included in the Database. (Doc. 77-10 at 24; *see also* Doc. 77-8 at 13-15, 24.) The Rules define certain reportable events like "checking/transaction account fraud" and "account abuse." (Doc. 77-10 at 21, 125.) Once reported, EWS inputs these events into the Database. (Doc. 86-1 ¶ 7.)

The Database serves as a loss-prevention resource for financial institutions. (*Id.* ¶¶ 5, 8.) Financial institutions can obtain customer information, including transaction histories, from EWS drawn from the Database in the form of a consumer credit report. (*Id.* ¶¶ 7-8.)

Regions Bank furnished "checking account fraud" and "account abuse" notations against Hebrank's account with incident dates of February 27, 2023, and December 26, 2023, respectively. (Doc. 77-5 at 4.) EWS included this information in the Database as well as consumer credit reports that it provided to various financial institutions. (*See* Docs. 76-3 at 3-4; 76-13.)

In February 2024, after receiving Hebrank's report from EWS, PNC Bank terminated her deposit account and removed her from her mother's account. (*See* Doc. 76-3 at 3-4, 10.) Wells Fargo Bank also denied her deposit account application because of EWS's reporting. (Doc. 76-13.) During this time, Hebrank maintained accounts with other financial institutions without disruption. (*See* Doc. 77-3.)

In March 2024, Hebrank requested that EWS provide a copy of her consumer credit report file. (Doc. 86-1 ¶ 32.) The file disclosure contained all the information in her consumer report, including the checking account fraud and account abuse notations for the

[1] Hebrank moves to strike the declaration of Scott Bernier (Doc. 86-1). (Doc. 103.) The Court draws facts from his declaration only for background purposes, and it does not substantively rely on the declaration for any purpose subject to an objection. Further, Hebrank only objects to the declaration's added "gloss"; she does not object to the attached exhibits. (Doc. 103 at 1-2.)

Regions Bank account. (*Id.*) In June 2024, Hebrank wrote to EWS disputing these notations. (Doc. 76-5.) EWS received her letter and updated the notations indicating they were disputed. (Doc. 77-6 at 4.) EWS then notified Regions Bank, which investigated the dispute and recommended that EWS remove the notations. (*See* Doc. 94-4 at 11-13.)

EWS contends that it wrote to Hebrank on July 12, 2024, informing her of the results of the reinvestigation, including that it removed the disputed notations from her Regions Bank account. (Doc. 86-1 ¶ 45.) Hebrank says that this letter was emailed and that she never received it, so she was not timely made aware of the results of the reinvestigation. (Doc. 20-1 ¶¶ 4-7.) On July 17 she sent a second letter disputing the notations. (Doc. 76-17.) EWS has since removed the disputed information from Hebrank's consumer report. (*See* Doc. 77-7.)

Hebrank sued EWS and Regions Bank in December 2024 but voluntarily dismissed Regions Bank in February 2025. (Docs. 1, 14.) Later that month, EWS moved to dismiss Hebrank's two claims against it: an unreasonable procedures claim under Section 1681e(b) and an unreasonable reinvestigation claim under Section 1681i. (Doc. 15.) The Court denied the motion because "[a]s compelling as EWS's [evidence] appear[ed], the Court [could not] consider it" on the motion to dismiss posture and Hebrank had sufficiently alleged violations of the two Sections. (Doc. 26.)

The parties engaged in discovery and, in March 2026, filed cross motions for summary judgment. (Docs. 76, 85.) Both parties have moved to exclude each other's expert witness, (Docs. 79, 82), and Hebrank moves to strike three declarations supporting EWS's motion for summary judgment (Docs. 103, 108). The Court held oral argument.

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that

might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (holding that the court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

Where, as here, the "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation modified). The summary judgment standard operates differently depending on whether the moving or non-moving party has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the movant bears the burden of proof on a claim at trial, the movant "must establish beyond controversy every essential element" of the claim based on the undisputed material facts to be entitled to summary judgment. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation modified). If the movant fails to make this showing, summary judgment is inappropriate, even if the non-moving party has not introduced contradictory evidence in response. When, on the other hand, the non-movant bears the burden of proof on a claim at trial, the movant may prevail either by citing evidence negating an essential element of the non-movant's claim or by showing that the non-movant's proffered evidence is insufficient to establish an essential element of the non-movant's claim. *See Celotex*, 477 U.S. at 322-23.

## III. DISCUSSION

Both parties move for summary judgment on Hebrank's unreasonable procedures claim and her unreasonable reinvestigation claim. The Court does not need to resolve the evidentiary motions to rule on the motions for summary judgment, and it will deny them as moot. The Court will address each claim in turn.

### A. Unreasonable Procedures

The parties first dispute whether the record supports Hebrank's unreasonable

procedures claim. Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." "In order to make out a prima facie violation under § 1681e(b), a consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). A CRA "can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures." *Id.*

**1. Inaccurate Information**

The parties dispute the accuracy of the checking account fraud and account abuse notations.[2] Information is inaccurate under Section 1681e(b) "where it either is patently incorrect or is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (citation modified). Whether information in a consumer report is misleading is analyzed from the perspective of a reasonable financial institution, the intended recipient of the report. *See Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020); *accord Silva v. Santander Consumer USA Inc.*, No. 3:24-cv-06057-DGE, 2026 WL 364426, at *5 (W.D. Wash. Feb. 10, 2026).

At the outset, the parties dispute how the Court should analyze the accuracy of the notations. EWS argues that the accuracy of its notations should be judged against the definitions included in its Operating Rules, which define "checking/transaction account fraud" as:

> Transacting, or attempting to transact, with an Account in a fraudulent manner, including, but not limited to, the passing of forged, altered, closed account, or stolen checks, or kiting (including drawing on: (a) a counterfeit or insufficient check

[2] Hebrank also suggests that the consumer report is inaccurate because it contains duplicative information, but she provides no citation to the record or any argument in support. (Doc. 76 at 13; *see also* Docs. 94, 106.) EWS points out that her consumer report, while listing the Regions Bank account twice, lists two separate notations on two different dates. (Doc. 100 at 16.) The Court thus concludes that the report is not duplicative and is not inaccurate in that regard.

> deposit; (b) an empty ATM envelope deposit; (c) non-negotiable items; and/or (d) willful misrepresentation of the transaction amount.)

(Doc. 77-10 at 125.) The Operating Rules further define "account abuse" as:

> An activity resulting in the closure of an Account or placement of an Account in Preclosure Status by a Contributor, via a manual or automated process, due to a loss taken by the Contributor with respect to which the Contributor either: (a) conducted no investigation; or (b) conducted an investigation but was unable to conclude that the loss involved Fraud.

(Doc. 77-10 at 21). Hebrank argues that the Court should reject EWS's "idiosyncratic" definitions and instead consider whether anything she has done could be characterized as fraud or abuse "in the real world." (Doc. 76 at 13.)

The file disclosure includes the definitions of checking account fraud and account abuse under a heading that states: "Definitions of terms used to create this file." (Doc. 77-5 at 32.) And the same definitions appear in the Operating Rules. (Doc. 77-10 at 21, 125.) Courts routinely apply a CRA's definition of the challenged notation when analyzing accuracy. *See, e.g.*, *Shaw*, 891 F.3d at 757 (applying Experian's definition of a short sale in analyzing whether the short-sale notation was accurate). Hebrank offers no authority supporting her argument that the Court should judge a report's accuracy against anything other than the report's definitions. (*See* Doc. 76 at 12-14; Doc. 94 at 307; Doc. 106 at 2-6.) Accordingly, the Court will apply EWS's definition to analyze the accuracy of the disputed notations.

**i. Checking Account Fraud**

EWS argues that the checking account fraud notation is accurate because Hebrank's admitted conduct fits within the Operating Rules' definition. Hebrank admits the check was "essentially a scam," (Doc. 85-8 at 5), and she attempted to transact with her account by depositing the check. This indicates that EWS's definition is satisfied. *See Martino v. Bank of Am., N.A.*, No. 23-CV-61780-WPD, 2024 WL 4297825, at *5 (S.D. Fla. Aug. 19, 2024), *aff'd sub nom. Rozov v. Bank of Am., N.A.*, No. 24-13034, 2025 WL 1620921 (11th

Cir. June 9, 2025) (holding that this same definition was satisfied and a checking account fraud notation was accurate when the plaintiff unknowingly deposited a fake check).

Hebrank responds that the notation is inaccurate because she was the victim and not the perpetrator of fraud. But as she recognizes, EWS's definition does not distinguish between victims and perpetrators. (Doc. 94 at 5; Doc. 77-10 at 125.) Drawing all inferences in favor of Hebrank and assuming that she was the victim of a scam, her conduct still fits within the definition because, by depositing the check, Hebrank was involved with or otherwise participated in the fraud, even if she did not intend to commit fraud herself. *See Martino*, 2024 WL 4297825, at *5.

Hebrank's argument that the lack of a victim-perpetrator distinction is materially misleading fails for similar reasons. Whether information is materially misleading under Section 1681e(b) is assessed from the perspective of the intended recipient of the report, *Erickson*, 981 F.3d at 1252, and Hebrank does not point to record evidence showing that sophisticated financial institutions would be misled by this notation. Pointing to the closure of her PNC Bank accounts and her denied Wells Fargo Bank application is not enough to support a reasonable inference of inaccuracy. (*See* Doc 94 at 6-7 (citing Docs. 76-3, 77-4, 76-13).)

Hebrank's other definitional arguments also fail. (Doc. 94 at 4-6.) It is not inaccurate to report this event as checking account fraud despite the lack of a loss because EWS's definition does not require a loss. The same goes for Regions Bank not contacting the police or personally accusing her of fraud; those actions are not preconditions for checking account fraud.

Hebrank next argues that the notation is inaccurate because Regions Bank later instructed EWS to delete the checking account fraud notation because there was no deposit fraud. (Doc. 94 at 7; 76-6 at 15.) But Regions Bank's 30(b)(6) representative testified that Regions Bank did not make a mistake when it originally reported the checking account fraud. (*See* Doc. 85-19 at 13-14, 17.) Rather, Regions Bank told EWS to delete the notation

because it changed its reporting policy in 2023. (*See id.*) This change in policy also does not permit an inference of inaccuracy.

Lastly, Hebrank argues that the notation is inaccurate because the listed incident date of February 2023 does not match the date of the alleged conduct. (Doc. 76 at 13.) EWS does not adequately respond to this argument. (*See* Doc. 100 at 16-17.) The file disclosure clearly lists the incident date as February 27, 2023. (Doc. 86-1 at 395.) And there is no dispute that the allegedly fraudulent transaction occurred in 2021. (*See* Doc. 100 at 11.) EWS is not entitled to summary judgment on the accuracy of the incident date, but for the reasons explained below, Hebrank's Section 1681e(b) claim nevertheless fails because EWS's procedures are reasonable.

**ii. Account Abuse**

The parties next dispute whether the account abuse notation is inaccurate. EWS argues that the $8.00 account fee overdrew Hebrank's Regions Bank account after years of non-use, eventually causing Regions Bank a 66-cent loss. (Doc. 100 at 14-15 (citing Docs. 102-8; 102-11; 100-12)[3].) Hebrank contends that the notation arose out of the same returned check as the checking account fraud notation. (Doc. 76 at 13-14; Doc. 106 at 3-4 (citing Docs. 76-6; 94-4).) And she further argues that if the account abuse notation was added because of an overdraft, the notation would still be inaccurate because Regions Bank did not suffer a loss, as the account abuse definition requires. (Doc. 94-4 at 9 (indicating Regions Banks suffered a "principal loss of zero" after closing her account).) EWS cites to Regions Bank records that indicate Hebrank's account was closed with a negative balance, but it does not address Hebrank's evidence that Regions Bank suffered no principal loss. (*See* Doc. 104 at 5-6 (citing Doc. 102-11).) But even if EWS is not entitled to summary judgment on the accuracy of the account abuse notation, for the reasons stated below, her claim fails because she has not demonstrated that EWS's procedures are unreasonable.

[3] EWS cites the declaration of Toshia Freeman, Regions Bank's 30(b)(6) witness, as evidence that the account abuse notation was added because of the overdrawn account and not for the returned check. Hebrank asks the Court to strike this as a sham declaration. (Doc. 108.) Whether the Court strikes the declaration does not affect its analysis because EWS presents additional, unobjected evidence for the motivation and accuracy of the account abuse notation.

**2. Reasonable Procedures**

At the outset, the parties dispute who has the burden of establishing whether EWS's procedures were reasonable. (Doc. 76 at 12; Doc. 85 at 16.) Hebrank points to *Guimond v. Trans Union Credit Information Co.*, which notes that in a Section 1681e(b) claim, "an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures." 45 F.3d 1329, 1333 (9th Cir. 1995). EWS points to post-*Guimond* district court decisions requiring that a plaintiff "plead and prove" that "the inaccuracy was due to Defendant's failure to follow reasonable procedures to ensure the maximum possible accuracy of his report." *Butler v. Equifax Info. Servs., LLC*, No. EDCV 18-2084 JGB, 2019 WL 2498939, at *2 (C.D. Cal. Apr. 3, 2019) (plaintiff must satisfy all three elements of a Section 1681e(b) claim).

The Court finds the analysis in *Saenz v. Trans Union, LLC* persuasive on this point. 621 F. Supp. 2d 1074, 1080 (D. Or. 2007). That court rejected Hebrank's burden-shifting interpretation of *Guimond*, instead concluding that the better reading of both *Guimond* and Section 1681e(b) is that the burden remains on the plaintiff, but it is minimal such that the "overwhelming majority of cases" will go to a jury. *Id.* at 1080 (quoting *Guimond*, 45 F.3d at 1333). In cases where the inaccuracies do not permit an inference of unreasonable procedures on their own, a plaintiff is still required to introduce evidence of unreasonable procedures to satisfy her burden. *Id.* at 1080-81. If it were otherwise, not just the "overwhelming majority," as *Guimond* suggests, but all cases with an inaccuracy would proceed past summary judgment. *See id.* The Court thus concludes that the burden remains on Hebrank to prove that EWS's procedures were unreasonable.

EWS argues that Hebrank has not shown its procedures are unreasonable because it accurately reported the information provided by Regions Bank, a reputable furnisher. (Doc. 85 at 20-23.) Furnishers are presumptively reliable sources, *Sarver v. Experian Information Solutions*, 390 F.3d 969, 972 (7th Cir. 2004), and "if a consumer reporting agency accurately transcribes, stores and communicates consumer information received from a source that it reasonably believes to be reputable, and which is credible on its face,

the agency does not violate Section 1681e(b) . . . simply by reporting an item of information that turns out to be inaccurate." *Grigoryan v. Experian Info. Sols., Inc.*, 84 F. Supp. 3d 1044, 1067 (C.D. Cal. 2014) (citation modified).

Hebrank argues that EWS's procedures are unreasonable because its validation process does not check whether Regions Bank's underlying determination was accurate. (Doc. 94 at 10-11.) But Hebrank offers no evidence that EWS had notice that Regions Bank had reported inaccurate customer information prior to her 2024 dispute. Nor does she point to evidence that EWS erroneously transcribed any data or otherwise created the inaccuracy itself. EWS's accurate reporting of information from Regions Bank is not actionable under Section 1681e(b). *See Saenz*, 621 F. Supp. 2d at 1080-81 (granting summary judgment for a CRA when the plaintiff could not establish that the CRA contributed to the inaccuracy beyond transcribing data provided by a facially credible furnisher).

Hebrank's remaining arguments—that it is unreasonable to not distinguish between victims and perpetrators and not require a loss in fraud events—fail because the Court has concluded that those aspects of the consumer report are not inaccurate.

"The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Guimond*, 45 F.3d at 1333. But summary judgment is appropriate when only one conclusion about the conduct's reasonableness is possible. *Saenz*, 621 F. Supp. 2d at 1080-81. Because the Court has rejected all of Hebrank's arguments, summary judgment for EWS is appropriate on the reasonableness of its procedures, and Hebrank's Section 1681e(b) claim fails as a matter of law.

**B. Unreasonable Reinvestigation**

EWS argues Hebrank's unreasonable reinvestigation claim fails because it timely reinvestigated Hebrank's dispute and deleted the disputed information. (Doc. 85 at 24-25.) Hebrank does not argue that EWS failed to do so; instead, she contends that EWS failed to mail her the results of its reinvestigation. (Doc. 94 at 17-19.) EWS replies that Hebrank raises her failure-to-mail theory for the first time at summary judgment.

(Doc. 104 at 13-14.)

"After having focused on one theory in their complaint and during discovery, plaintiffs cannot turn around and surprise the defendant at the summary judgment stage with a completely different theory." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 744 (9th Cir. 2025) (citation modified). This rule is based on the inherent unfairness and prejudice defendants might suffer if a new theory is disclosed too late, preventing them from presenting a full defense. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).

At no point does Hebrank identify what specific allegation in her Complaint puts EWS on notice of her failure-to-mail theory. (*See* Docs. 76, 94, 106.) Her Complaint makes no mention of mail or email. (*See generally* Doc. 1.) Nor does it discuss EWS's failure to communicate the results. (*Id.*) The Complaint simply cannot be read to include an allegation that EWS failed to mail her the results of its reinvestigation.[4]

To the extent that Hebrank's inclusion of a new theory could be read as moving for leave to amend her Complaint, the Court does not find good cause to do so. Fed. R. Civ. P. 15(a). The Court finds that a passing reference to not receiving a letter in her post-Complaint declaration did not provide EWS with sufficient notice to present a full defense. (*See* Doc. 20-1.) Thus, the Court finds that amendment would be unduly prejudicial to EWS and will deny leave to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (holding prejudice is the most important factor to consider in evaluating good cause for leave to amend).

Because the Court finds that Hebrank's theory does not appear in her Complaint and the record supports EWS's uncontested assertions that it timely investigated and deleted the disputed information (*see* Doc. 86-1 at 471-94), the Court will grant summary judgment for EWS on this claim as well.

---

[4] Even more, Hebrank never expressly disclosed this theory to EWS during discovery. And, as discussed below, her passing reference to not receiving EWS's letter in her post-Complaint declaration was insufficient to put EWS on notice of this theory.

## IV. CONLCUSION

Accordingly,

**IT IS ORDERED** that Hebrank's Partial Motion for Summary Judgment (Doc. 76) is **DENIED**.

**IT IS FURTHER ORDERED** EWS's Motion for Summary Judgment (Doc. 85) is **GRANTED**.

**IT IS FURTHER ORDERED** that pending motions (Docs. 79, 82, 103, 108) are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk of Court is instructed to enter judgment in EWS' favor and close this case.

Dated this 6th day of October, 2026.

Michael T. Liburdi
Michael T. Liburdi
United States District Judge